**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SHAWN W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV264 |
| | ) | |
| FRANK J. BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Shawn W., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 2 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 8 (Plaintiff's Brief); Docket Entry 10 (Commissioner's

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Brief)). For the reasons that follow, the Court will remand this matter for further administrative proceedings.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 430-50), alleging a disability onset date of February 15, 2017 (see Tr. 430, 439, 447), which he later amended to April 20, 2021 (see Tr. 223, 247). Upon denial of that application initially (Tr. 331-37, 353-57) and on reconsideration (Tr. 338-47, 358-59, 360-64), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 365-66). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 239-67.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 220-38.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 7-13, 428-29, 540-41), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2023.

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 5 at 1.)

> 2. [Plaintiff] has not engaged in substantial gainful activity since April 20, 2021, the [amended] alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: Crohn's disease and depression.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except that [he] can understand, remember and carry out simple, routine and repetitive tasks.
>
> . . .
>
> 6. [Plaintiff] is unable to perform any past relevant work.
>
> . . .
>
> 10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.
>
> . . .
>
> 11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from April 20, 2021, through the date of th[e ALJ's] decision.

(Tr. 226-33 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court will remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If

there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

(quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

"whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

**B. Assignment of Error**

Plaintiff's first and only assignment of error maintains that "[t]he ALJ erred by failing to account for the vocationally limiting effects of [Plaintiff]'s Crohn's Disease in the RFC and by failing to make specific findings concerning [his] need to have access to the restroom." (Docket Entry 8 at 4 (bold font and block formatting omitted).) In particular, Plaintiff points to his statements in a Function Report "that he had uncontrollable bowel movements, and that he uses the bathroom 3-4 times after waking up" (id. at 5 (citing Tr. 481-82)), as well as his "testi[mony] that he has five or more bowel movements a day on average and that each one lasts about 15-25 minutes" (id. (citing Tr. 254)), "he is afraid to

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

go out a lot of places . . . because of his Crohn's symptoms" (id. (citing Tr. 261)), "he keeps some supplies in his car[], such as a bucket, bio bags and adult wipes, because of the symptoms he experiences" (id. (citing Tr. 257)), and "he has 'flares' where he will need to use the restroom 'more than average'" (id. (quoting Tr. 257)). In Plaintiff's view, "[t]he medical evidence of record is supportive of [Plaintiff]'s statements about the frequency with which he must use the restroom." (Id.; see also id. at 5-8 (describing evidence Plaintiff believes supports his testimony about bathroom frequency (citing Tr. 539, 592, 598, 602-04, 606, 612-13, 615, 617-18, 622-23, 635, 637-38, 641, 790, 794, 809, 811-12, 817, 819-20, 836-37, 847, 851, 907, 933, 939, 959, 987-88, 1003, 1125, 1154-55, 1166)).)

Plaintiff further notes that "the ALJ correctly determined that [Plaintiff]'s Crohn's Disease, and the related depressive symptoms, were severe impairments" (id. at 8 (footnote omitted) (citing Tr. 226)), but emphasizes that, "in the RFC, the ALJ provided **no** limitations to accommodate for the most persistent and complained of symptom related to the Crohn's Disease - [Plaintiff]'s well documented diarrhea, which occurs multiple times per day and is accompanied by urgency" (id. (emphasis supplied by Plaintiff) (citing Tr. 228)). In addition, Plaintiff faults the ALJ for relying on Plaintiff's "largely normal examination findings" and "conservative treatment" (id. at 10 (citing Tr. 230))

to discount Plaintiff's Crohn's symptoms, and notes that "[his] diarrhea symptoms . . . are not particularly amenable to being demonstrated on objective examinations[,]" as well as that "[i]t is unclear exactly what additional treatment the ALJ believes that [Plaintiff] should pursue to control his diarrhea symptoms" (id. (citing Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 101 (4th Cir. 2020), for proposition that, "[w]here the doctors' treatment decisions are consistent with how the disease is generally treated, the claimant cannot be faulted 'for failing to pursue non-conservative treatment options where none exist'")).

According to Plaintiff, "[w]hen an ALJ finds that a claimant suffers with an impairment that requires him to have ready access to a bathroom, courts have found that the ALJ should make **specific** findings concerning the frequency and duration of Plaintiff's bathroom usage." (Id. at 8 (citing Taylor v. Astrue, No. 7:11CV162, 2012 WL 3637254, at *11 (E.D.N.C. Aug. 1, 2012) (unpublished), recommendation adopted, 2012 WL 3636923 (E.D.N.C. Aug. 22, 2012) (unpublished) (in turn citing Davis v. Commissioner of Soc. Sec., No. 2:10CV30, 2011 WL 442118, at *1 (N.D.W. Va. Feb. 2, 2011) (unpublished))); see also id. at 9-10 (additionally citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 389 (4th Cir. 2021), Summey v. Berryhill, No. 1:16CV1185, 2018 WL 708355, at *3 (M.D.N.C. Feb. 5, 2018) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 22, 2018) (Biggs, J.), Anders v.

Colvin, No. 1:13CV284, 2015 WL 4656291, at *4-5 (W.D.N.C. Aug. 6, 2015) (unpublished), and Binder v. Colvin, No. 5:12CV271, 2013 WL 1686306, at *3 (E.D.N.C. Mar. 21, 2013) (unpublished), recommendation adopted, 2013 WL 1694678 (E.D.N.C. Apr. 18, 2013) (unpublished)).) Plaintiff also points out that the VE "testified that just need[ing] three extra bathroom breaks per day would be considered work preclusive" (id. at 5 (citing Tr. 264-65)), as well as "that just needing to be in proximity to a restroom would impact employability explaining, 'It would reduce the job number considerably, . . . [and] would probably be work preclusive, due to the fact that most employers cannot guarantee proximity to a restroom'" (id. (quoting Tr. 266)). For the following reasons, Plaintiff's contentions establish reversible error by the ALJ.

RFC measures "the most a claimant can do despite" any physical and mental limitations, Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a), and represents a claimant's "'ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,'" i.e., "'8 hours a day, for 5 days a week, or an equivalent work schedule,'" Hines, 453 F.3d at 562 (emphasis omitted) (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-6p")). An ALJ must determine a claimant's exertional and non-exertional capacity only after

considering all of a claimant's impairments, as well as any related symptoms, including pain. See id. at 562-63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy), see 20 C.F.R. § 404.1567, and any non-exertional limitations may further restrict the claimant's ability to perform jobs within an exertional level, see 20 C.F.R. § 404.1569a(c). An ALJ need not discuss every piece of evidence in making an RFC determination, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); however, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, the ALJ's decision fails to provide the necessary "accurate and logical bridge," id., (internal quotation marks omitted), between the evidence and her findings that Plaintiff's Crohn's disease (A) qualified as a severe impairment at step two of the SEP (see Tr. 226), but (B) did not cause any limitations regarding ready access to a bathroom and/or additional time off-task or breaks to accommodate Plaintiff's fecal frequency and urgency (see Tr. 228).

As Plaintiff has argued (see Docket Entry 8 at 5), Plaintiff's statements and testimony establish that his Crohn's disease, despite treatment with Entyvio infusions every eight weeks and

Lomotil (see Tr. 255), caused him to experience at least four to five bowel movements per day (see Tr. 253-54, 257, 480-81) , with each one lasting about 15 to 25 minutes (see Tr. 254) and, more significantly, fecal urgency and accidents requiring ready access to a restroom (see Tr. 256, 482, 486, 489). The medical evidence of record overwhelmingly corroborates Plaintiff's consistency in reporting his fecal frequency and urgency. (See Tr. 598 (four to five bowel movements per day with urgency), 602 (increased frequency and urgency), 603 (frequent urge to use bathroom while driving), 617 (five bowel movements per day with constant urgency and frequent accidents necessitating bucket in car), 622 (five bowel movements per day with some urgency and accidents and fears long car trips), 635 (seven to 10 bowel movements per day with urgency and occasional accidents), 637 (seven to eight bowel movements per day with some accidents), 638 (six to seven bowel movements per day with urgency), 811 (rarely leaves home), 819 (six bowel movements per day on average), 933 (six bowel movements per day with urgency, accidents, and trouble leaving home), 987 (six bowel movements per day impacting quality of life).) Moreover, the record also contains some objective confirmation of Plaintiff's subjective symptom reporting, in that his therapist on two occasions observed that Plaintiff had to leave the treatment room for bathroom breaks. (See Tr. 604, 606.)

Furthermore, Plaintiff's counsel, in his opening statement, emphasized the disabling significance of Plaintiff's frequent and urgent bowel movements:

> Your Honor, as you know, this case is first and foremost about the Crohn's disease that affects [Plaintiff]. The medical records from his gastroenterologist consistently document [Plaintiff]'s complaints of having at least six bouts of diarrhea a day, with extreme urgency, abdominal pain, [and] malaise in spite of treatment, which includes regular infusions with Entyvio . . . . We would just argue that [Plaintiff]'s limited to light exertion . . ., but he would need some additional requirements. First, he would need immediate and close access to a bathroom that he could use at any time. He would need at least three additional bathroom breaks a day in addition – on top of what is normally allowed. And, then he would be off task at least 15% of the time, due to the frequent bathroom breaks. And, at least two absences a month, due to flareups in his Crohn's, as well as time that would be needed to get the Entyvio infusions.

(Tr. 246-47 (emphasis added).)

Despite the above-described, consistent evidence and the above-quoted argument of Plaintiff's counsel regarding Plaintiff's severe fecal frequency and urgency, the ALJ found only that "[Plaintiff]'s Crohn's impairment has been accommodated with a limitation for medium exertional work" and that "[n]o further limitations [we]re warranted in light of the evidence showing normal gait and strength as well as full range of motion." (Tr. 232 (emphasis added).) The ALJ explained neither why limiting Plaintiff to lifting and carrying 50 pounds occasionally and 25 pounds frequently, as required by medium work, see 20 C.F.R. § 404.1567(c), "accommodated" Plaintiff's severe fecal frequency

and urgency, nor why findings such as "normal gait and strength" and a "full range of motion" had any bearing on the severity of Plaintiff's fecal frequency and urgency. (Id.)

The ALJ's discussion of the medical evidence elsewhere in her decision also fails to support her omission of limitations in the RFC to account for Plaintiff's fecal frequency and urgency. The ALJ found that "[Plaintiff]'s allegations [we]re not fully consistent with the longitudinal evidence showing conservative treatment with largely normal examination findings." (Tr. 230 (emphasis added).) With regard to "conservative treatment" (id.), the record reflects that Plaintiff's gastroenterologists treated Plaintiff's Crohn's disease with prednisone, Imuran, Apriso, and Stelara injections (see Tr. 598), Entyvio infusions, and Lomotil (see Tr. 598), as well as significant dietary changes (see 257-58, 617, 623, 795, 815), and gastrointestinal-focused cognitive behavioral therapy (see Tr. 1124-25, 1154-55, 1166-67). As Plaintiff argues (see Docket Entry 8 at 10), the ALJ did not explain what additional and/or more aggressive treatment for Crohn's disease Plaintiff could or should have pursued (see Tr. 230). See Arakas, 983 F.3d at 102 (holding that, where "[the plaintiff's] doctors' treatment decisions were wholly consistent with how fibromyalgia is treated generally[, the plaintiff] cannot be faulted for failing to pursue non-conservative treatment options where none exist" (internal quotation marks omitted)).

With regard to "largely normal examination findings" (id.), the ALJ appears to have relied, in large part, on a normal fecal calprotectin level in January 2022 (see id. (citing Tr. 933)), a normal colonoscopy in August 2022 (see id. (citing Tr. 855, 933)), and a "largely unremarkable" CT of the abdomen and pelvis in June 2023 "noting no acute inflammation despite the presence of distal colonic diverticulosis" (id. (citing Tr. 1183-84)). The ALJ's (over)reliance on those "normal" tests overlooks that Plaintiff's treating gastroenterologist Dr. Richard Seth Bloomfeld believed A) that, given the absence of inflammation on Plaintiff's colonoscopy, Irritable Bowel Syndrome ("IBS") could account for Plaintiff's fecal frequency and urgency (see Tr. 933-34), and B) Plaintiff's gastrointestinal symptoms included a psychological component (see Tr. 988). Thus, even if Plaintiff's Entyvio had reduced (or even eliminated) active inflammation in Plaintiff's colon, Dr. Bloomfeld believed Plaintiff's IBS and mental impairments continued to cause Plaintiff to suffer debilitating fecal frequency and urgency, a fact plainly overlooked by the ALJ.

The Commissioner points out that the ALJ relied on Dr. Bloomfeld's observation in March 2023 that Plaintiff did not take Lomotil regularly (see Docket Entry 10 at 6 (citing Tr. 230 (in turn, citing Tr. 987))), as well as on the reconsideration-level state agency medical consultant's opinion that, despite Plaintiff's Crohn's disease, he remained capable of a full range of medium work

(id. (citing Tr. 228, 231-32 (in turn, citing Tr. 344))). Neither of those findings amounts to substantial evidence to support the complete absence of an allowance for ready access to a bathroom and/or bathroom visits in the RFC.

Regarding Plaintiff's Lomotil use, Dr. Bloomfeld's entire statement reads as follows:

> [Plaintiff] continues to have diarrhea which is impacting his quality of life. He has 6 BMs daily. He has nocturnal stools 'often', tries to limit by not eating late. There is gassy pain at times. He takes Lomotil prior to leaving the house and he receives a several hour benefit but he does not take it regularly.

(Tr. 987.) Notably, at Plaintiff's prior visit, Dr. Bloomfeld had recommended that Plaintiff take Lomotil twice per day instead of on an as-needed basis (see Tr. 934), and, thus, Dr. Bloomfeld's remark that Plaintiff did not take Lomotil "regularly" (Tr. 987) likely referred to Plaintiff taking Lomotil when he left the house rather than twice per day, and did not imply that he did not regularly have diarrhea symptoms, particularly given Plaintiff's reports to Dr. Bloomfeld of diarrhea up to six times per day "impacting his quality of life" (id.). To the extent that the Commissioner intended to assert that the ALJ discounted Plaintiff's subjective symptoms due to his failure to follow prescribed treatment, i.e., Dr. Bloomfeld's recommendation that Plaintiff take Lomotil twice per day (see Tr. 934), such an argument would fail as a post hoc rationalization, as the ALJ did not make any finding that

Plaintiff's failure to follow prescribed treatment supported denial of any accommodations in the RFC for Plaintiff's bowel-related conditions (see Tr. 228-32). See O'Mahony v. Colvin, No. 1:13CV35, 2015 WL 3505211, at *5 (M.D.N.C. June 3, 2015) (unpublished) ("[Securities & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947),] limits the Court to reviewing the rationalizations initially put forth by an administrative agency. . . . [T]he ALJ did not address whether [the p]laintiff's alleged failure to follow treatment would constitute a basis for denying benefits. Such a decision would conceivably require a detailed analysis of, inter alia, the impairment's causes and treatment, whether the treatment would effectively alleviate the symptoms of the impairment to allow for work, and whether the individual complied with the treatment." (internal parenthetical citation omitted)), recommendation adopted, slip op. (M.D.N.C. June 30, 2015) (Osteen, C.J.).

The state agency medical consultant's medium exertion RFC also does not provide much support for the ALJ's omission of accommodations in the RFC for Plaintiff's fecal frequency and urgency because, despite the evidence (noted above) corroborating Plaintiff's reported frequency and urgency, the consultant only mentioned Plaintiff's subjective reports of frequency and urgency once in the context of noting that "bowel movements ha[d] decreased to 4-5 daily" (Tr. 341), and entirely failed to discuss Plaintiff's

need for ready access to a bathroom and/or extra bathroom visits in the consultant's explanation of the RFC (see Tr. 344).[7]

Moreover, the ALJ's errors do not qualify as harmless under the circumstances presented here. See Calhoun v. Commissioner of Soc. Sec., ___ F.4th ___, ___, 2026 WL 2602326, at *4 (4th Cir. 2026) ("[W]e will set aside the [Commissioner's] decision for error only where the error is harmful. An error is harmless when the court can confidently conclude that no reasonable ALJ, fully

[7] The Commissioner deems "inapposite" Taylor and other cases relied on by Plaintiff (Docket Entry 10 at 4), because those cases "found if a claimant requires ready access to a restroom due to an impairment, the ALJ should make specific findings concerning the frequency and duration of [the p]laintiff's need to use the restroom" (Docket Entry 10 at 3-4 (citing Docket Entry 8 at 8-9)), and notes that the ALJ here "did not find Plaintiff required ready access to a restroom" (id. (citing Tr. 228)). Indeed, in the Summey, Binder, Taylor, and Davis cases relied on by Plaintiff, the ALJs had all found that the claimant required access to the bathroom in the RFC determination, but then failed to make any finding as to how frequently and for how long the claimant would need bathroom breaks. See Summey, 2018 WL 708355, at *3-4; Binder, 2013 WL 1686306, at *3; Taylor, 2012 WL 3637254, at *11; Davis, 2011 WL 442118, at *1. However, those cases also serve to underscore the importance of an ALJ assessing the threshold question of whether a claimant's gastrointestinal impairments require ready access to a bathroom, an assessment absent in the instant case (see Tr. 228-32). Moreover, Dowling and Anders do support Plaintiff's arguments in this case. In Dowling, the United States Court of Appeals for the Fourth Circuit held that the ALJ erred by "fail[ing] to analyze whether [the plaintiff]'s RFC was impacted by her need to work near a restroom and take frequent bathroom breaks," because "considerable evidence [existed] in the record demonstrating that [the plaintiff] regularly experienced diarrhea and incontinence, as well as drainage from her anal fissure[,] . . . requir[ing] bathroom breaks at a frequent, and often unpredictable, rate." Dowling, 986 F.3d at 389 (emphasis added). Similarly, in Anders, despite significant record evidence of the intensity, persistence, and limiting effects of the plaintiff's "esophagitis, gastritis, duodenitis, and Mallory-Weiss tears in the lining of his esophagus," Anders, 2015 WL 4656291, at *1 (footnote omitted); see also id. at *5 ("[The plaintiff] testified graphically about how his [gastrointestinal ('GI')] disorders affect his daily life when he is having an episode."), *5 n.11 ("[T]he fla[re] up begins with extreme, extreme retching at first, and then . . . once I empty my stomach then it's almost a dry heave to the point where I am retching and that's when the esophagitis comes into play from all the retching. It ruptures the esophagus and that's when the blood in the stomach starts." (brackets omitted)), the court remanded because the ALJ (like the ALJ here) failed to sufficiently discuss the impact of those impairments on the plaintiff's RFC in the decision, see id. at *5.

crediting the relevant evidence, could have reached a different result."); see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The VE testified that no jobs would exist for an "individual need[ing] at least three additional bathroom breaks a day, on top of normal breaks and lunch" (Tr. 264-65), as well as for an individual off task more than "10% of an eight-hour workday excluding normal breaks" (Tr. 265). The VE further testified that a requirement of "close access to a bathroom" (id.) "would reduce the job numbers considerably" and "would probably be work preclusive, due to the fact that most employers cannot guarantee proximity to a restroom" (Tr. 266). As such, remand for the ALJ to re-evaluate Plaintiff's Crohn's symptoms could result in the ALJ including ready access to a bathroom and/or additional time off task or breaks for bathroom visits in the RFC, which the VE testified could preclude competitive work (see Tr. 264-66).

In sum, Plaintiff's first and sole assignment of error demonstrates that the ALJ reversibly erred.

## III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED**, and that this action is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to include re-evaluation of Plaintiff's Crohn's symptoms and reconsideration of the impact of those symptoms on the RFC, including an express discussion of whether Plaintiff's symptoms necessitate ready access to a bathroom and the frequency and duration of Plaintiff's bathroom visits.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 29, 2026